| | |
|---|---|
| PRINCE PAUL RAYMOND WILLIAMS, | No. 1:21-cv-00321-NONE-EPG (PS) |
| Plaintiff, | SCREENING ORDER |
| v. | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT PLAINTIFF'S FIRST AMENDED COMPLAINT BE DISMISSED, WITHOUT LEAVE TO AMEND |
| AETNA INC., et al., | |
| Defendants. | |
| | (ECF NO. 5) |
| | TWENTY-ONE-DAY DEADLINE |

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Plaintiff Prince Paul Raymond Williams ("Plaintiff") is proceeding *pro se* and *in forma pauperis* in this action. Plaintiff filed the Complaint commencing this action on March 3, 2021, (ECF No. 1), which the Court screened and found failed to state any claims on March 23, 2021, (ECF No. 4). Plaintiff filed the first amended complaint ("FAC") on April 9, 2021. (ECF No. 5). The FAC, which is now before the Court for screening, brings claims against his former employer and supervisors. The Court finds that the Complaint fails to state any cognizable claims. For the reasons that follow, the Court recommends dismissing the FAC, without further leave to amend.

Plaintiff may file objections to these findings and recommendations within fourteen days of the date of service of this order.

///

1

# I. SCREENING REQUIREMENT

As Plaintiff is proceeding *in forma pauperis*, the Court may screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (citation and quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. *Iqbal*, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that pro se complaints should continue to be liberally construed after *Iqbal*).

# II. THE COURT'S FIRST SCREENING ORDER

The Court screened Plaintiff's original complaint on March 23, 2021. (ECF No. 4). The Court found that the complaint was not a short and plain statement of Plaintiff's claims, and it therefore violated Federal Rule of Civil Procedure 8(a). (*Id.* at 5-7). The Court noted that Plaintiff's complaint was a long narrative, "argumentative, prolix, replete with redundancy, and largely irrelevant." (*Id.* at 6) (quoting *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996)). The deficiencies the Court noted, for instance, included that the complaint was a long narrative, contained "several pages of definitions and legal arguments interspersed with factual allegations," had large portions that were "single-spaced and written in a small font," and contained general

grievances about income withholding. (*Id.*). The Court proceeded to provide legal standards for section 1983 and employment discrimination claims and granted Plaintiff leave to amend. Any amended complaint was limited to 15 pages, including exhibits, and had to comply with Federal Rule of Civil Procedure 10(b) and Eastern District of California Local Rule 130(c), which largely concern formatting and readability of complaints.

**III. DESCRIPTION OF AND ALLEGATIONS IN THE COMPLAINT**

**A. Description of FAC**

The FAC complies with the Court's limitations on Plaintiff's amended complaint. It is thirteen pages long. It is appropriately spaced and numbered, as required by Federal Rule of Civil Procedure 10(b) and Local Rule 130(c). The FAC begins with a caption, statements on jurisdiction and venue and the parties. A chronological statement of facts begins at the bottom of page two and runs through part of page four. Pages four through seven are mostly a list of legal principles. For instance, Plaintiff alleges that "It is the UNITED STATES SUPREME COURT who stated the contract between employer and employee is that of personal employment by which labor and other services are exchanged for money or other forms of property. Coppage v. Kansas, 236 U.S. 1 (1915)." (ECF No. 5 at 4). Later, Plaintiff states that "Defendant(s) actions through the process of income withholdings are defamatory, fraudulent, negligent, an intentional infliction of emotional distress; while subjecting Plaintiff to peonage, and unjust enrichment, while acting under color of law." (*Id.* at 7). Plaintiff proceeds to list nine counts: discrimination, harassment, retaliation, defamation, fraud, negligence, intentional infliction of emotional distress, peonage, and unjust enrichment. (*Id.* at 7-12). The FAC concludes with a request for damages, a demand for a jury trial, and the signature and fingerprint of Plaintiff. (*Id.* at 12-13).

**B. Allegations**

The FAC alleges as follows:

Plaintiff began working for Defendants Aetna Inc., Jacqueline Garnett and Kimberly Burns as a Health Concierge in August 2018. Defendant Burns is a Customer Service Manager. Defendant Garnett is a Customer Service Supervisor.

///

On September 1, 2018, child support representatives of Solano, Fresno County Department of Child Support Services claimed to be a judge or issuing official pursuant to 18 U.S.C. § 912 and sent income withholding orders to Defendants. These orders did not have a wet signature from a judge pursuant to 18 U.S.C. § 505. These orders claimed a false debt owed; were false contracts under 7 U.S.C. § 6(b); were false, deceptive, and misleading statements under 18 U.S.C. § 1001 and 15 U.S.C. § 1692(e); and constituted debt collection by unfair and unconscionable means pursuant to 15 U.S.C. § 1692(f). Defendants presented the false claims to Plaintiff as a fact and then performed income withholding against Plaintiff's earnings.

In September 2018, Defendants began charging Plaintiff a $1.50 administrative fee with every withholding. That same month, Plaintiff began making contact with Solano, Fresno County Department of Child Support Services to resolve the matters.

In early 2019, Defendants Burns and Garnett discriminated, harassed and retaliated against Plaintiff in violation of 42 U.S.C. § 2000e-2. During a meeting between Defendants and Plaintiff, Defendant Burns told Plaintiff "I'm not so sure you're accustomed to working in a structured environment." Plaintiff was offended by that statement. Defendant Garnett then took notice and sarcastically asked, "Awww … Does he need someone to hold his hand?"

In mid-2019, Defendant Garnett emailed Plaintiff, instructing him to complete multiple training courses. Plaintiff requested replacement courses and Defendant Garnett told him no.

In early 2019, Plaintiff requested assistance from Defendants with work duties via instant messenger. Defendant Burns told Plaintiff to "Go find a supervisor."

In May 2019, Plaintiff was placed on a Performance Action Plan by Defendant Garnett. During weekly meetings about the plan, Plaintiff was informed only of whether certain metrics were met or not and department standards.

In August 2019, Defendant Garnett told Plaintiff that an unnamed employee stated that Plaintiff did not like her and had used derogatory language in reference to Defendant Garnett. Defendant Garnett reported this information to company security and to Defendant Aetna's human resources. Defendant Garnett did not afford Plaintiff with due process to prove the statements were false.

On September 30, 2019, Plaintiff was evicted because Plaintiff could not afford to pay for living expenses after the income withholding. From that date through October 4, 2019, Plaintiff notified Defendants of Plaintiff's need for a leave due to emotional distress via the Aetna National Accounts Attendance Line. On October 3, 2019, Defendant Garnett called Plaintiff to inform him of possible termination. On October 7, 2019, Plaintiff sent a complaint to Defendants about his complaints against Defendants Burns and Garnett, his suffering from the income withholdings, and the lack of due process. In November 2019, Plaintiff was involuntarily terminated as an Aetna employee.

Plaintiff is an African American man. He was qualified for his position of Health Concierge.

**IV. SECTION 1983**

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979*)); see also Chapman v. Houston Welfare Rights Org*., 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which

he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

Additionally, a plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. *Iqbal*, 556 U.S. at 676-77. In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *Iqbal*, 556 U.S. at 676-77; *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978). To state a claim for relief under § 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (citations and internal quotation marks omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that

showed a reckless or callous indifference to the rights of others." *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

## V. ANALYSIS OF PLAINTIFF'S CLAIMS

### A. Exhaustion

Plaintiff's first claim is for discrimination. (ECF No. 5 at 7). Because Plaintiff alleges he "suffer[ed] discrimination, harass[]ment and retaliation from actions of Defendant(s) Burns and Garnett pursuant to 42 U.S.C. § 2000e-2," (*id.* at 2), the Court presumes his allegation arises under Title VII of the Civil Rights Act of 1964. Because in this cause of action, Plaintiff alleges he "is an African-American male," the Court will also presume he alleges discrimination based on both race and sex.

"As a precondition to the commencement of a Title VII action in court, a complainant must first file a charge with the Equal Employment Opportunity Commission[.]" *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1846 (2019). A plaintiff may also file such a charge with "the appropriate state agency, thereby affording the [EEOC or state] agency an opportunity to investigate the charge." *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002). The claim with the agency must then be exhausted. *Id.*

Although the failure to exhaust administrative remedies under Title VII is "an affirmative defense, so the defendant bears the burden of pleading and proving it," *Kraus v. Presidio Tr. Facilities Div./Residential Mgmt. Branch*, 572 F.3d 1039, 1046 n. 7 (9th Cir. 2009), some courts have still found that "a plaintiff must allege compliance with the mandatory processing rule in order to state a claim on which relief may be granted," *Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1302 (N.D. Cal. 2020); *accord Freeman v. Cty. of Sacramento Dep't of Hum. Assistance*, No. 2:19-cv-02418-KJM-CKD (PS), 2020 WL 2539268, at *2 (E.D. Cal. May 19, 2020) (substantially identical and citing *id.*); *Pringle v. Wheeler*, 478 F. Supp. 3d 899, 908 (N.D. Cal. 2020) (same); *Perkins v. U.S. Navy*, 2012 WL 2945916, at *2 (S.D. Cal. July 19, 2012) (granting motion to dismiss because "Plaintiff fails to allege that he substantially complied with Title VII's administrative exhaustion requirements").

///

Plaintiff does not allege he filed a charge with the EEOC or any state agency. Therefore, he does not allege he complied with Title VII's administrative exhaustion requirements.[1]

**B.     Discrimination**

Separate and apart from the issue of administrative exhaustion, Plaintiff fails to state a claim for discrimination.

Title VII of the Civil Rights Act of 1964 provides that it shall be an unlawful employment practice for an employer to fail to refuse to hire, or otherwise discriminate against, any individual because of her race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(b). "Title VII prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact'). *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009).

To establish a prima facie case of intentional discrimination (disparate treatment) under Title VII, Plaintiff must show that: "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004); *see also Raad v. Fairbanks North Star Borough School Dist.*, 323 F.3d 1185, 1195-96 (9th Cir. 2003) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  For disparate impact cases, "[t]o establish a prima facie case of discrimination, a plaintiff must show that the facially neutral employment practice had a significantly discriminatory impact." *Connecticut v. Teal*, 457 U.S. 440, 446 (1982). Thus, "a prima facie case of disparate-impact liability [is] essentially, a threshold showing of a significant statistical disparity . . . ." *Ricci*, 557 U.S. at 587 (citing *id.*).

Although "a plaintiff is not required to plead a prima facie case of discrimination in order to survive a motion to dismiss," *Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1304 (N.D. Cal. 2020)

---

[1] Plaintiff's failure to plead exhaustion with administrative requirements alone would warrant dismissal without prejudice, with leave to amend. However, for the reasons described below, the Court recommends dismissal with prejudice without leave to amend.

8

(citing *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1050 n.2 (9th Cir. 2012)); *cf. Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (holding "an employment discrimination plaintiff need not plead a prima facie case of discrimination"), courts dismiss cases where the plaintiff failed to make "sufficient, nonconclusory allegations plausibly linking the disciplinary action to discrimination," *Austin v. Univ. of Ore.*, 925 F.3d 1133, 1138 (9th Cir. 2019); *accord Mayes v. Kaiser Found. Hosps.*, 917 F. Supp. 2d 1074, 1079–80 (E.D. Cal. 2013) (finding plaintiff failed to state Title VII discrimination claim because "although plaintiff describes some of the events leading to his termination, he provides no meaningful detail suggesting the termination was because of his race or sex").

Here, Plaintiff alleges that he is an African American man and that he was fired. He also alleges some interactions between himself and his supervisors before he was fired. However, he does not link his firing to his being an African American man. Although Plaintiff includes many quotations from his employer and its representatives, none of the statements concern Plaintiff's race. Instead, they concern various other issues, including allegations that Plaintiff used derogatory language against a co-worker and comments concerning Plaintiff's job performance. While Plaintiff alleges that he was fired after being falsely accused of using derogatory language, Plaintiff does not allege that his firing relates to his race. Thus, Plaintiff does not allege disparate treatment.

Nor does Plaintiff allege disparate impact. He does not allege that any other similarly situated individuals were treated better or worse than he was by his employer. Plaintiff identifies no facially neutral employment practice that has a significantly discriminatory impact—or even a discriminatory impact at all—upon a group protected by Title VII.

Therefore, he fails to state a discrimination claim. *See Austin*, 925 F.3d at 1138 (dismissing discrimination claim because plaintiff failed to allege "sufficient, nonconclusory allegations plausibly linking the disciplinary action to discrimination"); *Mayes*, 917 F. Supp. 2d at 1079-80 ("although plaintiff describes some of the events leading to his termination, he provides no meaningful detail suggesting the termination was because of his race or sex").

///

### C. Harassment

"To prevail on a hostile workplace claim premised on either race or sex, a plaintiff must show: (1) that he was subjected to verbal or physical conduct of a racial or sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003), *as amended* (Jan. 2, 2004). "In assessing whether a work environment is sufficiently hostile, the court examines the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " *Reynaga v. Roseburg Forest Prod.*, 847 F.3d 678, 687 (9th Cir. 2017) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)). " '[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)' are not sufficient to create an actionable claim under Title VII, but the harassment need not be so severe as to cause diagnosed psychological injury." *Id.* at 788 (quoting *Faragher*, 524 U.S. at 788).

Here, Plaintiff has not alleged he was subjected to verbal or physical conduct of a racial or sexual nature. Moreover, the harassment Plaintiff alleges was not sufficiently hostile to violate Title VII. Plaintiff has alleged several utterances that he found offensive, but they are akin to teasing, offhand comments and isolated incidents that are not extremely serious. Therefore, Plaintiff has failed to state a claim for a hostile work environment.

### D. Retaliation

Under Title VII's antiretaliation provision, an employer may not discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). "To establish a prima facie case of retaliation, [a plaintiff] must show that he undertook a protected activity under Title VII, his employer subjected him to an adverse employment action, and there is a causal link between those two events." *Reynaga*, 847 F.3d at 693.

///

The statute lists two types of protected activities mentioned in the statute: "oppos[ing] any practice made an unlawful employment practice by this subchapter" or "participat[ing] in any manner" in proceedings under the subchapter. 42 U.S.C. § 2000e-3(a). The opposition clause applies when an employee "show[s] that []he had a reasonable belief that the employment practice []he protested was prohibited under Title VII." *Trent v. Valley Elec. Ass'n Inc.*, 41 F.3d 524, 526 (9th Cir. 1994). The participation clause "is to protect the employee who utilizes the tools provided by Congress to protect his rights." *Vasconcelos v. Meese*, 907 F.2d 111, 113 (9th Cir. 1990). Thus, "[a]ccusations made in the context of charges before the Commission are protected by statute; charges made outside of that context are made at the accuser's peril." *Id.*

Here, Plaintiff alleges in his retaliation claim that Plaintiff's injuries occurred "after complaining about unlawful discrimination, unlawful harassment, and income withholdings." (ECF No. 5 at 8). Plaintiff's conclusory allegation that he complained about *unlawful* discrimination and *unlawful* harassment do not show that Plaintiff had a reasonable belief that the protested employment practices were prohibited under Title VII. Even under the liberal pleading standards for Title VII claims, Plaintiff has failed to allege discrimination or harassment, as he has not alleged any linkage between his race or sex and any discrimination or harassment.

Additionally, Plaintiff does not allege that Defendants or any Aetna representative said or otherwise indicated its adverse actions related to any complaint of unlawful discrimination or harassment. Instead, Plaintiff describes Defendant Aetna taking actions in response to allegations that Plaintiff used derogatory language against Defendant Garrett. Although Plaintiff alleges those claims were false, the claims provide a reason other than retaliation for Defendant Aetna's actions. In other words, even taking Plaintiff's allegations as true, they do not establish that any Defendant acted in retaliation for Plaintiff protesting an illegal employment practice.

Thus, Plaintiff has failed to allege a claim for retaliation.

**E.     Fraud**

Plaintiff alleges that Defendants acted fraudulently by "present[ing] false claims of a debt owed to Plaintiff prior to performing income withholdings" and "not provid[ing] a copy of a ratified contract regarding the alleged debt(s), or a Certified copy of their license(s) to collect a

debt in California." (ECF No. 5 at 9). Plaintiff cites 7 U.S.C. § 6(b), 18 U.S.C. § 1001, 15 U.S.C. § 1692(e), and 15 U.S.C. § 1692(f). Each of those sections is inapplicable.

7 U.S.C. § 6(b) deals with regulations from the Commodity Futures Trading Commission concerning foreign boards of trade. Plaintiff's allegations do not relate to such transactions.

18 U.S.C. § 1001 is a criminal statute, and there is no private right of action. Therefore, individuals like Plaintiff do not have standing to sue for violations of that criminal statute. *Hung Nguyen v. Yolo Cty. Dist. Attorney's Off.*, No. 2:21-CV-00239-TLN-KJN (PS), 2021 WL 929558, at *4 (E.D. Cal. Mar. 11, 2021), *report and recommendation adopted*, 2021 WL 1404754 (Apr. 14, 2021) ("[T]o the extent the complaint raises claims for false statements and fraud under 18 U.S.C. Sections 1001 and 1031, plaintiff, as a private citizen, has no authority to bring claims under criminal statutes." (citing *Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006))); *Williams v. McCausland*, 791 F. Supp. 992, 1001 (S.D.N.Y. 1992) ("The complaint in *Williams III* charges Walsh with violating 18 U.S.C. § 1001 … . No private right of action is provided under this statute, and the claim is therefore dismissed."); *Abou-Hussein v. Gates*, 657 F. Supp. 2d 77, 81 (D.D.C. 2009) ("[P]laintiff's claims of fraud or false statements under 18 U.S.C. § 1001 and conspiracy under 18 U.S.C. § 241 are also barred because these criminal statutes do not expressly create a private right of action upon which plaintiff may sue defendants."), *aff'd*, 2010 WL 2574084, at *1 (D.C. Cir. June 11, 2010) ("[A]s the district court correctly determined, 18 U.S.C. §§ 241 and 1001 are criminal statutes that do not expressly create a private right of action.").

15 U.S.C. § 1692 is part of the Fair Debt Collection Practices Act ("FDCPA"). "The FDCPA broadly prohibits a debt collector from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.' " *Dunlap v. Credit Protection Ass'n, L.P.*, 419 F.3d 1011, 1012 (9th Cir. 2005) (per curiam) (quoting 15 U.S.C. § 1692e). A "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

"Child support payments 'do not qualify as 'debts' under the FDCPA because they were

not incurred to receive consumer goods or services. Rather, the state agency responsible for collecting child support imposed these obligations upon appellants to force them to fulfill their parental duty to support their children.'" *Davis v. California Dep't of Child Servs.*, No. 2:20-cv-01393-TLN-AC (PS), 2020 WL 5039243, at *2 (E.D. Cal. Aug. 26, 2020), *report and recommendation adopted*, 2020 WL 5943974 (E.D. Cal. Oct. 7, 2020), *reconsideration denied*, , 2021 WL 431441 (E.D. Cal. Feb. 8, 2021) (quoting *Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86, 88 (4th Cir. 1994)). Other courts considering this issue have reached the same conclusion. *See, e.g., Mabe*, 32 F.3d at 88 (quoted *supra*); *Turner v. Cook*, 362 F.3d 1219, 1227 (9th Cir. 2004) (citing *Mabe* favorably in discussion of what constitutes a 'debt' under FDCPA); *Okoro v. Garner*, 21 F. App'x 486, 488 (7th Cir. 2001) ("child support is not an ' obligation ... of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes.' " (quoting 15 U.S.C. 1692a(5)).

In addition, Plaintiff would need to establish that Defendants use "false, deceptive and misleading" representation or means in connection with Plaintiff's debt. 15 U.S.C. § 1692e. Plaintiff alleges that Solano, Fresno County Department of Child Support Services claimed to be a judge and sent income withholding orders to Defendants and otherwise acted falsely.[2] However, Solano, Fresno County Department of Child Support Services is not a party to this action.

**F.     Peonage**

Courts have found that claims for peonage or violations of Thirteenth Amendment rights concerning child-support payments fail. As the Northern District of California has explained:

> Both the Ninth Circuit and the California Supreme Court have expressly

---

[2] In addition, it appears Plaintiff is incorrect about some of his legal claims concerning the validity of the child-support order and subsequent withholdings. Plaintiff mainly complains that there was no judge's signature on the order sent by "Solano, Fresno County Department of Child Support Services," and Aetna withheld an additional $1.50 fee from each of his paychecks. However, those actions are not prohibited by California law. *See* Cal. Fam. Code §§ 5246(b) ("In lieu of an earnings assignment order signed by a judicial officer, the local child support agency may serve on the employer a notice of assignment in the manner specified in Section 5232. An order/notice to withhold income for child support shall have the same force and effect as an earnings assignment order signed by a judicial officer. An order/notice to withhold income for child support, when used under this section, shall be considered a notice and shall not require the signature of a judicial officer."), 5235(d) ("The employer may deduct from the earnings of the employee the sum of one dollar and fifty cents ($1.50) for each payment made pursuant to the order.").

13

> rejected the contention that the enforcement of child support obligations violates the Thirteenth Amendment. In *United States v. Ballek,* 170 F.3d 871, 874 (9th Cir.1999), the Ninth Circuit held that child support "fall[s] within that narrow class of obligations that may be enforced by means of imprisonment without violating the constitutional prohibition against slavery." Noting that all fifty states authorized the enforcement of child support obligations with criminal sanctions, the court found that "ensuring that persons too young to take care of themselves can count on both their parents for material support" was "one of the most important and sensitive exercises of the police power." *Id.* The court therefore affirmed a six-month jail sentence for willfully failing to pay child support.
>
> In *Moss v. Superior Court (Ortiz),* 17 Cal.4th 396, 408, 71 Cal.Rptr.2d 215, 950 P.2d 59 (Cal.1998), the California Supreme Court also upheld a delinquent parent's jail sentence against a Thirteenth Amendment challenge. The *Moss* Court first found that "in those decisions in which a Thirteenth Amendment violation has been found on the basis of involuntary servitude, the court has equated the employment condition to peonage under which a person is bound to the service of a particular employer or master until an obligation to that person is satisfied." *Id.* The Court reasoned that although child support obligations may require a non-custodial parent to seek and accept employment, they do not "bind the parent to any particular employer or form of employment or otherwise affect the freedom of the parent. The parent is free to elect the type of employment and the employer, subject only to an expectation that to the extent necessary to meet the familial support obligation, the employment will be commensurate with the education, training, and abilities of the parent." *Id.*
>
> ...
>
> Given the clear precedent rejecting the argument that child support violates the Thirteenth Amendment, the Court GRANTS the motion to dismiss Plaintiff's claim that Defendant has subjected him to a condition of "involuntary servitude" WITHOUT LEAVE TO AMEND.

*Farley v. Santa Clara Cty. Dep't of Child Support Servs.*, 2011 WL 4802813, at *4–5 (N.D. Cal. Oct. 11, 2011). *See also Knight v. City of Mercer Island*, 70 F. App'x 413, 415 (9th Cir. 2003) (in case concerning child-support payments, affirming summary judgment on plaintiff's "claim alleging violations of the anti-peonage statute, 42 U.S.C. § 1994, and the Thirteenth Amendment because Knight was not subject to peonage, or involuntary servitude in liquidation of any debt or obligation").

As Plaintiff's claims for peonage relate to child-support obligations, Plaintiff fails to state a claim.

**G.     State-Law Claims**

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Article III, § 2, of the Constitution delineates [t]he character of the controversies over which federal judicial authority may extend.  And lower federal-court jurisdiction is further limited to those subjects encompassed within a statutory grant of jurisdiction.  Accordingly, the district courts may not exercise jurisdiction absent a statutory basis." *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) (alteration in original) (citations and internal quotation marks omitted).

"In 28 U.S.C. §§ 1331 and 1332(a), Congress granted federal courts jurisdiction over two general types of cases: cases that aris[e] under federal law and cases in which the amount in controversy exceeds $ 75,000 and there is diversity of citizenship among the parties.  These jurisdictional grants are known as federal-question jurisdiction and diversity jurisdiction, respectively.  Each serves a distinct purpose: Federal-question jurisdiction affords parties a federal forum in which to vindicate federal rights, whereas diversity jurisdiction provides a neutral forum for parties from different States." *Home Depot*, 139 S. Ct. at 1746 (alteration in original) (citations and internal quotation marks omitted).

Additionally, "[e]xcept as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts … have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C § 1367(a).

Subsection (c) of that statute permits district courts to decline supplemental jurisdiction in certain situations:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which

the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C § 1367(c)(1)-(4).

"The court's discretion to decline jurisdiction over state law claims is informed by the values of judicial economy, fairness, convenience, and comity." *Snell v. Deutsche Bank Nat. Tr. Co.*, 2015 WL 1440295, at *6 (E.D. Cal., Mar. 27, 2015) (citing *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (*en banc*)).

Here, the Court has found that Plaintiff has failed to state any federal claims. Thus, it will not exercise supplemental jurisdiction on any potential remaining claims, 28 U.S.C. § 1367(c)(3), and finds that Plaintiff's remaining claims fail for lack of subject-matter jurisdiction.

## VI. CONCLUSION AND ORDER

The Court finds Plaintiff has failed to state a claim. The Court previously granted Plaintiff leave to amend his complaint and provided relevant legal standards. Moreover, as discussed above, even assuming Plaintiff's facts are true, Plaintiff still does not state a claim. Therefore, the Court does not recommend granting further leave to amend.

For the foregoing reasons, it is HEREBY RECOMMENDED that Plaintiff's first amended complaint be dismissed, without leave to amend.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

\\\
\\\
\\\
\\\

Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **May 3, 2021**

/s/ Erin P. Grosjean
UNITED STATES MAGISTRATE JUDGE